UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER MILLS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SAIA, INC., a Delaware corporation,

Defendant.

CASE NO. 26-cv-5033-BHS

ORDER

This matter is before the Court on plaintiff Mills' motion to remand, Dkt. 16.

In December 2025, Mills filed a putative class action in Pierce County Superior Court, alleging defendant Saia committed wage violations against its hourly and non-exempt employees in Washington state. Dkt. 1-1.

In January 2026, Saia timely removed the case to this Court under the Class Action Fairness Act (CAFA). Dkt. 1. It asserted the case met all CAFA requirements, including an amount in controversy over $5 million. *Id.* at 6.

Mills filed an amended complaint in February 2026. Dkt. 15. He alleges, on behalf of 248 class members employed from 2022 to the present, Saia "engaged in a common

ORDER - 1

course" of failing to provide rest and meal breaks, withholding pay for overtime work, missed breaks, and mandatory work expenses, preventing workers from accruing and using sick leave, and failing to maintain accurate payroll records. *Id.* at 6–11. Specifically, Mills asserts that he took "his meal break after the first five hours about three to four times a week" and that his supervisor required him to "complete work before clocking in" "[s]everal times a month." *Id.* at 7–8. He claims Saia's conduct was willful such that he is entitled to "twice the amount of wages withheld" under chapter 49.52 RCW. *Id.* at 17.

Saia's regional human resources manager Alex Strocsher estimates these class members earned between $20.67 and $38.40 per hour. Dkt. 20 at 2. The "most common tenure among" the employees was "one year or more at Saia." *Id.*

Mills moves to remand, arguing Saia does not meet the $5 million threshold amount in controversy. Dkt. 16. He contends Saia overestimates the number of days each class member worked, assumes an inflated 60% violation rate, incorrectly calculates double damages, and proposes a speculative attorneys' fee. *Id.*

Saia responds that a 60% violation rate is supported by Mills' complaint. Dkt. 19 at 8 (citing Dkt. 15 at 8). It estimates, based on Strocsher's declaration, that the putative class members worked at Saia for an average of 1.5 years. *Id.* at 9 (citing Dkt. 20). It calculates an amount in controversy of approximately $2.35 million, doubled due to Mills' claimed double damages, and adds 25% attorneys' fees to arrive at a total of $5.87 million. *Id.* at 11.

ORDER - 2

Putative class actions are removable under CAFA when the aggregate amount in controversy exceeds $5,000,000 for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). There is no presumption against removal for cases removed under CAFA. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("No antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court."). Under CAFA, the removing defendant retains the obligation to demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is met in order to sustain its removal in the face of a motion to remand. *Rodriquez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 981 (9th Cir. 2013).

Though the burden remains with the defendant, it is not a daunting one. The defendant need only plausibly allege the jurisdictional amount exceeds $5 million. *Perez v. Rose Hill Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citing *Dart Cherokee*, 574 U.S. at 89). The defendant may "rely on a chain of reasoning that includes assumptions to calculate the amount in controversy." *Id.* (citation modified) (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)). While the assumptions cannot be "pulled from thin air," they may be based on the language of the complaint and "do not necessarily need to be supported by evidence." *Id.* (citation modified) (citing *Arias*, 936 F.3d at 925; *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). It is the Court's task to determine if the defendant's "'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Transp. Serv., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

ORDER - 3

Evidence is required only when the plaintiff or the Court questions the defendant's jurisdictional allegations. *Id.* The plaintiff can challenge the amount in controversy by way of a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). A facial attack accepts the defendant's allegations as true but challenges their sufficiency to meet the amount in controversy. *Id.* A factual attack, on the other hand, "challenges the truth of the . . . jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700 (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). When the plaintiff "mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* (citing *Ibarra* 775 F.3d at 1197). Both parties may submit evidence outside the complaint, such as affidavits or declarations, in support of their position. *Ibarra*, 775 F.3d at 1197–98. When the plaintiff offers a "different, better assumption, the Court "should consider the claim under the better assumption." *Jauregui*, 28 F.4th at 996. "But an assumption is not unreasonable simply because another equally valid assumption may exist." *Perez*, 141 F.4th at 810.

Courts have varied approaches to estimating a defendant's violation rate when determining the amount in controversy. *Young v. Lab'y Corp. of Am.*, No. 3:23-cv-05892-DGE, 2024 WL 689605, at *4–5 (W. D. Wash. Feb. 20, 2024). For example, when the complaint does not "specify the frequency of the alleged missed meal or rest periods," courts in this Circuit have "frequently upheld at least a 20% violation rate." *Chavez v.*

ORDER - 4

*Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019).

However, a "higher violation rate might be appropriate if Plaintiff's complaint alleged a widespread or systematic pattern of violations." *Young*, 2024 WL 689605, at *5; *see, e.g., Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding a 60% violation rate reasonable where plaintiff alleged a uniform practice of meal and rest period violations); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable where plaintiff alleged defendant violated wage and hour laws as a "policy or practice").

Mills' complaint alleges repeatedly that Saia engaged in a "common course of wage and hour abuse" and "unlawful compensation practices." Dkt. 15 at 2, 5–11. He claims his own meal break was late "three to four times" per five-day work week and that he worked without clocking in "[s]everal times a month." *Id.* at 6–8. This amounts to a uniform "course of conduct" and "practice[]," at least 3 out of 5 meals (60%) missed per week, in his own words. *Id.* at 2, 5.

As a "reasonable alternative" to Saia's proposed 60% violation rate, Mills suggests using 50%. Dkt. 21 at 8. He does not explain why this 10% difference improves the accuracy or reasonableness of the amount in controversy. The Court cannot endorse a 50% violation rate absent any supporting rationale. *See Perez*, 141 F.4th at 810 ("[A]n assumption is not unreasonable simply because another equally valid assumption may exist.").

Although Saia initially calculated the amount in controversy based on 780 working days in the class period, it has now reduced that to 367 days, per Strocsher's assertion that most putative class members worked there for one year or more. Dkt. 19 at 10; Dkt. 1 at 7. Mills proposes dropping that number to 360, but again, does not explain why. Dkt. 21 at 8.

Mills rightly argues that Saia used an erroneous average hourly wage rate. Dkt. 21 at 5. Based on the lowest hourly rate, $20.67, and the highest hourly rate, $48.40, stated in Strocsher's declaration, the average is $29.50 per hour. Dkt. 20 at 2.

However, even with that hourly wage adjustment, Saia meets CAFA's $5 million amount in controversy threshold. Applying Saia's model, Dkt. 19 at 10, the total damages for missed meal periods, rest breaks, and overtime adds up to $2,193,624.74. *See* Dkt. 21 at 8 (Mills applying Saia's model to arrive at his proposed alternative calculation). Doubling that amount based on Mills' claimed double damages, prior to adding any attorneys' fees, the total amount in controversy comes to $4,387,249.48.

Mills argues the attorneys' fees are speculative—not because 25% is an unreasonable figure, but because the underlying damages amount is unsubstantiated. Dkt. 16 at 10. While the Ninth Circuit has declined to adopt a per se rule regarding 25% attorneys' fees in class actions, she offers no alternative. *Arias*, 936 F.3d at 928. District courts in the Circuit have concluded that a 25% fee award is reasonable in similar wage and hour CAFA cases. *Anderson v. Starbucks Corp.*, 556 F.Supp.3d 1132, 1138 (N.D. Cal. 2020). This is consistent with the Court's own experience calculating attorneys' fees in such cases.

Including 25% attorneys' fees to the $4.39 million determined above, the total amount in controversy is $**5,484,061.85**.

Saia has proven, by a preponderance of the evidence, that the amount in controversy is over $5 million.

Mills' motion to remand, Dkt. 16, is **DENIED**.

IT IS SO ORDERED.

Dated this 21st day of April, 2026,

BENJAMIN H. SETTLE
United States District Judge

ORDER - 7